## Morris J. Neiderman, Defendant in Error, v. The People's Gas Light & Coke Company, Plaintiff in Error.

### Gen. No. 13,701.

1. PERSONAL INJURIES—*when doctrine of res ipsa loquitur does not apply. Held,* under the evidence in this case, that the doctrine of *res ipsa loquitur* was inapplicable.

Action in case. Error to the Municipal Court of Chicago; the Hon. THOMAS B. LANTRY, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed April 6, 1908.

B. M. SHAFFNER, for defendant in error.

SEARS, MEAGHER & WHITNEY, for plaintiff in error; FREDERICK A. FREEARK, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

In this case the Municipal Court gave judgment in favor of the defendant in error, plaintiff in that court, against the plaintiff in error, defendant in that court, for $58 and costs, on the following state of facts:

The plaintiff, Morris J. Neiderman, was a furniture dealer at Nos. 612 and 1123 Milwaukee avenue in Chicago. On the evening of January 19, 1907, one of his drivers had some furniture to deliver on the east side of Cleaver street, and drove south on the west side of that street between Blackhawk and Bradley streets, and attempted to cross over to the east side near the proposed point of delivery. His horse suddenly sank into the ground up to his belly. To get him out of his predicament it became necessary to cut portions of the harness. Testimony was introduced to the effect that this injury to the harness and the damage which the horse suffered amounted to between $58 and $70. The judge in the Municipal Court to whom the cause was submitted, without a jury, entered judgment for the lesser sum.

The defendant was connected with the accident in this way. For the purpose of inspection and renovation of its gas mains and service pipes preparatory to the repaving of the street, the People's Gas Light & Coke Company, the defendant, had opened a trench on Cleaver street on January 18, 1907, the day before the accident. They had a permit from the city of Chicago to do the work. The permit provided that "the opening was to be rammed while being filled." It was also provided in it that "in issuing the permit it is expressly agreed and understood that in making opening under this permit no boards or planks upon which blocks rest shall be cut out or broken. That such boards shall be taken up for their entire length and replaced as originally laid."

The evidence is that there was at the place of the accident no "boards" or "cedar blocks;" there had been a block pavement on the street, but it was all

worn out. The street was therefore not in good condition before the trench was opened. The earth, however, was firm enough, the street foreman for the defendant says, for light wagons but not for heavy traffic. After the pipes—main and service—were inspected and repaired, the trench was on the same day filled up for a part of its length. A section of about forty feet was left open, and this was roped around and a red light placed at each end. The remainder of the trench, which was from three to six feet deep, the defendant filled in late in the afternoon of the eighteenth. It was where this filling had been done that the accident happened. The foreman testified they got all the earth they took out of the trench into it again, and that they did it by putting back the earth and flushing it with water, using a hose connected with the city hydrant for that purpose, instead of tamping or pounding by other means. The watchman for the company swore the trench was filled in the "general way" that such filling was "always done".

There was no proof of any city regulation by ordinance as to the exact method which should be pursued. The term "rammed" is indeed used in the permit, but there was no proof whether the putting back the earth —if it was all restored—could not be done as well or better by water tamping as by any other. The sworn answer of defendant to a filed interrogatory of the plaintiff was that "the trench was flooded at the time the dirt was thrown back into the opening in order to get the dirt all back and give a solid foundation." The weather for twenty-four hours after the filling in was very bad. It rained very hard all the time, so that the street where the filling had taken place was a flood of water, and the part of the trench left open could not be filled that day in consequence.

The theory of the plaintiff, and that on which the trial judge must have proceeded, was that "res ipsa loquitur." The fact of the horse's sudden disappearance was proof, counsel say, of the defendant's gross

negligence in the filling of the trench. We do not think this can be so considered. It certainly was proof that the street was not in a reasonably safe condition when the accident happened, but we think that to hold the defendant liable there was required affirmative proof of its negligence in its manner of doing the work. Its liability does not depend, as the city's might, on a duty to use reasonable care to keep a street in good condition.

The proof of this negligence in doing the work being wanting, as we think, in the absence of evidence that any reasonable manner of putting back the earth in the trench would have been a better way and made the street under all the circumstances more safe, we must reverse the judgment of the Municipal Court.

*Reversed.*